**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | |
|---|---|
| PRO PREMIUM FINANCE COMPANY, INC; DANIEL GLANTZ; and TONY PEREZ<br>           *Plaintiffs,*<br><br>   v.<br><br>US PREMIUM FINANCE SERVICE COMPANY, LLC; US PREMIUM FINANCE a division of THE BRAND BANKING COMPANY; and THE BRAND BANKING COMPANY<br><br>           *Defendants.* | Case No. 16-cv-60009-UU |

**PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION OF
MAGISTRATE JUDGE ALICIA M. OTAZO-REYES AND REQUEST
THAT THE COURT TAKE JUDICIAL NOTICE OF ADDITIONAL EVIDENCE**

Plaintiffs Pro Premium Finance Company, Inc. ("PPF"), Daniel Glantz ("Glantz"), and Tony Perez ("Perez") (collectively "Plaintiffs"), pursuant to this 28 U.S.C. §636, file the following objections to the Report and Recommendation of Magistrate Judge Alicia M. Otazo-Reyes (the "Report") on Plaintiffs' Motion for Preliminary Injunction and respectfully requests that this Court take Judicial Notice of further evidence.

**STANDARD**

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C.A. § 636.

1

## **OBJECTIONS**

### I. INTRODUCTION

The Report fails to follow the proper test for determining whether an injunction should issue. Additionally, the Report makes three erroneous findings: (i) the Report erroneously finds that Plaintiffs lack standing to bring their claims; (ii) the Report erroneously finds that the PPF name had been carved out of the Collateral; and (iii) the Report erroneously finds that Plaintiffs failed to satisfy a condition precedent to bringing a claim for rescission.

### II. THE REPORT UTILIZES AN IMPROPER STANDARD

"A district court may grant injunctive relief if the movant shows (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and (4) that if issued the injunction would not be adverse to the public interest." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989). Instead of considering the remaining three factors required for a preliminary injunction to issue, the Report considered only the likelihood of success on the merits. DE 49 at 18. This was in error. "The necessary level or degree of possibility of success on the merits will vary according to the court's assessment of the other factors." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). Before the Court determines the "necessary level or degree of possibility of success on the merits" in the instant matter, it necessarily must consider the remaining three factors. Because the Report did not, the Report cannot be adopted.

### III. PLAINTIFF DANIEL GLANTZ MUST HAVE STANDING

The Report states that both "receivership and non-receivership assets were sold to Defendants." DE 49 at 17. If true, PPF and Glantz must necessarily have standing to bring claims with respect to the non-receivership assets. The Report, however, finds that "absent joinder by the Receiver… the claim for rescission of the APA may not go forward." *Id.* This is in error.

If non-receivership assets were sold to Defendants, then the persons who owned those assets before the sale—PPF/Daniel Glantz included—have standing to pursue a claim seeking rescission of the agreement transferring those assets. By stating that the Receiver must be joined, the Magistrate Judge made a determination of indispensability under Fed. R. Civ. P. 19 without having conducted the appropriate test.[1] *See Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982) ("Rule 19 states a two-part test for determining whether a party is indispensable. First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible.").

Irrespective of whether non-receivership assets were sold, the Receiver is not an indispensable party for two reasons. First, this Court can accord complete relief to the existing Parties without the Receiver's joinder. Plaintiffs seek rescission. Rescission can be granted without upsetting or involving the Receivership. Second, the Receiver does not claim an interest in the action. In fact, the Receiver has known about this action since the day it was instituted. DE

---

[1] "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19.

3

16-2 at 2-3. Further, the Receiver voluntarily participated in the hearing on Plaintiffs' Motion.[2] DE 34 at 1. Neither during nor subsequent to Defendants' Counsel's lengthy questioning of the Receiver regarding the Collateral, the UCC filing, and any property that could possibly exist outside of the Collateral did the Receiver ever claim an interest in this matter. This fact "stands as evidence that he ratifie[d] this claim proceeding as it stands." DE 44 at 3.

Further, Daniel Glantz has and always has had standing to bring these claims. Daniel Glantz signed the APA in his personal capacity.[3] DE 43-9 at 7. Daniel Glantz personally guaranteed the $54 million loan from BankUnited, which guarantee includes any interest accrued. Transcript at 60:23-61:7. Defendants admittedly used the Collateral to fund their own new premium finance business. *Id.* at 174:16-22. Defendants admittedly failed to reimburse a significant portion of the Collateral that was used to fund the new premium finance business. *Id.* As a result of Defendants' wrongful conduct, additional interest was added to the debt that Glantz personally guaranteed. *Id.* at 101:20-102:1-2. Daniel Glantz has a personal interest in this action separate and distinct from any possible interest that PPF (and therefore the Receiver) may have. The Report's conclusions either that the Receiver is a necessary party or that Daniel Glantz lacks standing are both in error.

IV.   **NO TRANSFER OF THE COLLATERAL COULD HAVE OCCURRED**

The Report correctly found that, according to the APA, the purchaser sought to acquire "the PPF name; PPF's customer lists; and PPF's rights in the loan administration platform." DE 49 at ¶28. The Report also correctly found that the customer list and platform were under the

---

[2] The Order states that, "No subpoenas shall be served on the Receiver without leave of this Court." DE 43-1 at 8. Neither Plaintiffs nor Defendants sought leave of the Court in the Receiver Action prior to the Receiver's appearance. The Receiver was under no obligation to attend.
[3] The APA defines the Seller (PPF) and the Owners (Daniel and Toni Glantz) as the "Selling Parties." It goes on to state that "[t]he Selling Parties and Buyer are referred to in this Agreement as the "Parties." DE 43-9 at 1.

4

purview of the Receivership. However, the Report mistakenly found that the PPF name had been carved out of the Receivership and thus was validly transferred via the APA. *Id.* at 16-17. This finding is in error.

The Report reads, "The Order Appointing Receiver incorporated the Letter Agreement, which **provided for** BankUnited's release of its lien on the PPF name. Therefore, claims related to the sale of the PPF name to Defendants pursuant to the APA are not within the purview of the Receivership." DE 49 at 16 (emphasis added). However, the Letter Agreement did not **provide** for a release of BankUnited's lien on the PPF name.[4] It merely provided that BankUnited would—eventually—release its lien on the PPF name: "Upon entry of the Court Order, as soon as practicable **thereafter** Bank shall file a limited release of its lien in and to the name of the Borrower only for no additional consideration." DE 43-1 at 12 (emphasis added). In fact, BankUnited never filed a limited release of the PPF name. USPF did not—and indeed could not—put on any evidence indicating that the PPF name had been released from BankUnited's Collateral. Exhibit A – UCC Filing List.[5] Accordingly, like the customer list and PPF's rights in the loan administration platform, the PPF name constituted part of the Collateral when the APA was executed and was under the exclusive control of the Receivership—not PPF, Daniel Glantz, or Toni Glantz.

The parties to the APA agreed to a transfer certain of the Collateral even though no party to the APA had the authority to do so. Those persons, including Defendants here, are charged with knowledge of the terms of the Order by virtue of having incorporated it into the APA. *See*

---

[4] "[A] person may add or delete collateral covered by, continue or terminate the effectiveness of, or… otherwise amend the information provided in, a financing statement by filing an amendment…" Fla. Stat. § 679.512.

[5] As to PPF, Daniel Glantz, and Glantz Holdings, L.L.C., only one UCC filing has been entered since the Letter Agreement was originally executed. The May 19, 2016 filing by BankUnited against Daniel and Toni Glantz does not release the PPF name. Exhibit A at 4.

DE 49 at n.4. In any event, the APA is void *ab initio* because Plaintiffs had no right to sell the Collateral.[6] As there are no disputed facts as to whether BankUnited actually released its lien upon the PPF name, the Court can make this determination immediately.[7] Ga. Code § 13-5-4 ("If the consideration upon which a contract is based was given as a result of a mutual mistake of fact or of law, the contract cannot be enforced."). The Report is in error.

## V. PLAINTIFFS DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THEIR RESCISSION CLAIM

Under Georgia law, Plaintiffs have two distinct grounds for rescission. The first is rescission based upon fraudulent inducement. *See* Ga. Code § 13-4-60. The second is rescission based upon breach/nonperformance. *See* Ga. Code § 13-4-62. Contrary to the Report, Plaintiffs demonstrated a substantial likelihood of success on the merits on their claims under both of these statutes.

### a. Rescission Based On Fraudulent Inducement

Generally, in order to rescind a contract, Georgia law requires a defrauded party to restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value. Ga. Code Ann. § 13-4-60 (West).

Following this general proposition, the Report finds that Plaintiffs' claims for rescission based on fraud fail because Plaintiffs did not return the "several months salary paid to Glantz and

---

[6] At the very least, the parties to the APA suffered from a mutual mistake of fact as to the seller's right to transfer the assets.

[7] Plaintiffs note that Defendants first raised the issue of the Collateral remaining in the hands of the Receiver in an attempt to have this action dismissed. Hearing Transcript at 75:15-76:25. When the subsequent pleadings were filed by Order of the Magistrate, Defendants pointed out that "the Receiver took control of all of Pro Premium's general intangibles, choses in action, commercial tort claims, equipment, books and records, customer lists, and other assets" and goes on to note that "general intangibles" means any personal property. DE 38 at 3. Surely the PPF name is included as personal property. Any contrary argument by Defendants now would be disingenuous at best.

6

Perez….." DE 49 at 17. The Report finds that, in order to seek rescission, Plaintiffs would have to return: (1) the wages earned as employees of USPF and (2) something commensurate to the $38 million worth of loans that USPF purportedly funded since the transaction. DE 49 at 17-18. The Court's finding is in error.

First, Plaintiffs' employment with Defendants and wages earned during that time are no bar to rescission. The APA does not provide for wages to be paid to Plaintiffs. Had Defendants ultimately not employed Plaintiffs, Plaintiffs would have had no ability to sue Defendants for breach of the APA and force such employment. As such, rescission of the APA cannot require Plaintiffs to give back wages that were paid separate and apart from the APA. Turning to the Master Agreements, those Agreements were prefaced by a letter from USPF explicitly indicating that the letters were not employment contracts. DE 43-2 at 3, 14. The Master Agreements themselves contain no terms regarding financial consideration or employment. *Id.* at 4-11, 15-22. Instead, the Master Agreements function as stand-alone confidentiality and non-competition agreements, not employment contracts. *Id.* In essence, those Agreements state that in exchange for Plaintiffs receiving certain knowledge and experience from their employment with USPF, they agree to various restrictive covenants. *Id.* at 7, 18. The Master Agreements in no way guarantee employment nor address wages.

Neither the APA nor the Master Agreements contractually obligated USPF to employ Plaintiffs or pay them any wages. The Court cannot read those terms into the APA because they simply do not exist. *See Florida Dep't of Highway Safety & Motor Vehicles v. Nat'l Safety Comm'n, Inc.*, 75 So. 3d 298, 303 (Fla. 1st DCA 2011) ("The Court, however, may not insert terms into a private contract that the parties did not choose, no matter how reasonable such terms

7

might appear."); *Tuzman v. Leventhal*, 174 Ga. App. 297, 300 (1985) ("This court may not create a modification of the plain terms of a contract by judicial fiat.").

Yet, when analyzing Plaintiffs' claims for rescission, the Report treats employment and compensation as part of the APA and Master Agreement, and requires Plaintiffs to return that compensation as a precondition to advancing the rescission claim. This is in error. *See, e.g.*, *Sanders v. Looney*, 247 Ga. 379, 381, 276 S.E.2d 569, 572 (1981) ("As a condition precedent to equitable rescission of a contract, a party is not, as a general rule, required to return that which he will be entitled to retain."). Further, requiring the return of such wages would be inequitable because it would confer a double benefit upon USPF: USPF would have gained the benefit of Glantz and Perez's labor without paying anything for that labor. Georgia law does not require Plaintiffs give back their wages under these circumstances. *See Crews v. Cisco Bros. Ford Mercury, Inc.*, 411 S.E.2d 518 (Ga. Ct. App. 1991) ("Neither the defrauding party nor the purchaser may retain an unfair advantage; there is no room for *either* party to have its cake and eat it, too.").

Second, turning to the issue of the $38 million worth of loans USPF purportedly financed since the transaction, the Report again misses the mark. The underlying rationale of an offer of restoration as a condition of rescission is to prevent a party from nullifying a deal while simultaneously retaining the benefits of that deal. The Report suggests that Plaintiffs benefitted from the $38 million worth of loans USPF financed. But that is not the case. USPF funded $38 million worth of its own loans for itself. USPF received the sole and exclusive benefit from funding the new loans. USPF and USPF alone earned the interest from those loans, the fees associated with those loans, and any other related compensation. To make matters worse, USPF funded its own loans using PPF's Collateral as an interest free loan. Plaintiffs have not received

any benefit from (1) USPF funding its own loans (2) USPF funding loans only of its own choosing (3) USPF earning interest and fees from those loans and (4) USPF using PPF's Collateral to fund those loans. As such, the notion of restoration prior to demanding rescission simply does not apply. There is nothing for Plaintiffs to give back. Plaintiffs never obtained a benefit from those loans. To the contrary, Daniel Glantz was personally harmed in the transaction because of additional interest he incurred as a result of USPF diverting the PPF Collateral.

In these circumstances, under Georgia law, there is no requirement that Plaintiffs give anything back. If there is nothing of value, there is nothing to tender and no pre-suit tender requirement. *See, e.g.*, *Nat'l Old Line Ins. Co. v. Lane*, 323 S.E.2d 707, 711 (Ga. Ct. App. 1984) (party entitled to sue for rescission without making any pre-suit offer of restoration where the "annuity polices" at issue "represented nothing of any intrinsic value which the plaintiff could reasonably have been required to return to the defendant."). Further, if the plaintiff can raise an issue of fact as to whether or not they received anything of value, dismissal of a rescission claim for failure to make a pre-suit offer of restoration is improper. *See, e.g.*, *Metter Banking Co. v. Millen Lumber & Supply Co.*, 382 S.E.2d 624, 628 (Ga. Ct. App. 1989) (no requirement that party make any pre-suit offer of restoration where there was a plausible factual question as to whether plaintiff actually received anything of value).

The Report raises obstacles to rescission that do not exist under Georgia law. Instead, the only rule is that the party seeking rescission may not derive an unconscionable advantage from the rescission. *See Crews,* 411 S.E. 2d at 519. Ironically, if the deal were rescinded, although PPF would get back its name, USPF would continue to service the loans it had funded until those loans were closed out. This means that USPF would continue to earn interest on those loans.

9

Plaintiffs would earn nothing. It is entirely unclear how this result could possibly be viewed as Plaintiffs gaining "an unconscionable advantage."

### b. Rescission Based on Nonperformance

The Report finds that, "[b]ecause Plaintiffs have not satisfied the condition precedent to their rescission claims, their arguments in their closing brief that they have established a breach of the APA and a claim for fraud [D.E. 39 at 5-61] are irrelevant. In any event, the foregoing factual findings do not support Plaintiffs' contention." DE 49 at fn 16. This finding is in error for two reasons.

First, under Georgia law, there is no condition precedent to bringing a rescission action based upon a breach of the contract. "A party may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made." Ga. Code § 13-4-62. Under this statute, there is no pre-suit tender requirement whatsoever. *See Int'l Software Sols., Inc. v. Atlanta Pressure Treated Lumber Co.*, 390 S.E.2d 659, 661 (Ga. Ct. App. 1990) ("It is apparent from a comparison of the plain language of OCGA §§ 13-4-60 with 13-4-62 that the latter statute, pertaining to rescission for nonperformance, embraces this basic concept. OCGA § 13-4-62 contains no express statutory requirement for restoration as a condition precedent to rescission for nonperformance, rather it authorizes such rescission 'but only when both parties can be restored to the condition in which they were before the contract was made.'"). Plaintiffs have a valid claim for rescission due to substantial breach. *See Radio Perry, Inc. v. Cox Commc'ns, Inc.*, 746 S.E.2d 670, 675 (Ga. Ct. App. 2013) ("The remedy of rescission for nonperformance is appropriate when the breach is so substantial and fundamental as to defeat the

object of the contract.") (internal quotations omitted). Rejecting Plaintiffs' claim for rescission based on a fundamental breach for failure to make a pre-suit offer of restoration is clear error.

Further, contrary to the Report's findings, the evidence presented at the hearing identifies a clear breach of the APA. The Receiver testified that on October 12, 2015, he pointed out to Bill Villari of USPF/USPFSC and Pat Elvin and BankUnited that the Order did not provide for use of the Collateral to fund new loans. Transcript at 89:9-15. The APA, executed by Villari on October 14, 2015, states that the purchaser will fund new loans ". . . in the manner as contemplated by that certain Order Appointing Receiver . . . ." DE 14-1 at 2. In spite of the language of the APA, and Defendants' prior knowledge that the Order did not allow for use of the Collateral, Defendants used the Collateral to fund new loans. Transcript at 174:16-175:13. This represents a clear breach of the central provision of the APA. Defendants' agreement to fund new business without using the Collateral was the sole reason why Daniel Glantz executed the APA. Transcript at 44:9-12. Rescission is the appropriate remedy.

The Report further suggests that Defendants agreed to modify the APA.[8] DE 49 at ¶¶23-24. First, neither Glantz nor PPF ever agreed to this purported modification. The October 13, 2015 agreement—a modification of the Letter Agreement incorporated into the Order—was between Bill Villari of USPF/USPFSC and Pat Elvin of BankUnited and was accepted by the Receiver. *Id.* at 89:9-90:5.[9] Neither PPF nor Glantz were parties to this agreement. Second, even putting the facts in a light most favorable to Defendants, Defendants substantially breached even

---

[8] In order to accept this proposition, we would first have to disregard the provision of the APA stating that the "Agreement may not be modified, nor may any provision hereof be waived, absent a writing signed by the Party against whom enforcement of the amendment or waiver is sought." DE 14-1 at ¶6.5.

[9] There was absolutely no evidence presented that either Daniel Glantz or Toni Glantz, the signatories to the APA, knew about the alleged modification to the Letter Agreement prior to execution of the APA the following day.

the allegedly modified agreement. The agreement, coined the "Funding Transition Plan," outlined the procedure by which Defendants would use the Collateral to fund new loans (which use was prohibited under the Letter Agreement and Receivership Order) and stated that "USPF will notify BankUnited on a [daily] basis which of the [loans] meet USPF underwriting criteria, so that BankUnited can fund or reject based on such criteria . . . Once these loans are boarded on FinancePro, USPF will settle [daily or xx times per week] with BankUnited by wiring funds to a designated account at BankUnited, [paying down the short-term BB&T loan referenced above." Hearing Exhibit 2 at 3 (all brackets in original). The Receiver confirmed that daily repayment of the drafts was the original expectation. Transcript at 96:1-6.

Despite even this "agreement," Defendants failed to reimburse the Receivership for some $2.5 million worth of loans funded with PPF Collateral. Diverting PPF Collateral to fund new loans prevented Daniel Glantz from using those funds to pay off his debt to Bank United, thereby causing Glantz to personally incur thousands of dollars' worth of additional interest. *Id.* at 96:23-97:21; 101:17- 102:2. In short, even if the APA was somehow modified without the consent of PPF or Glantz or the court, Defendants breached the modified agreement, thereby causing both PPF and—more directly—Daniel Glantz substantial damages. *Id.* at 130:13-131:5.  Plaintiffs are entitled to rescission based on Defendants' fundamental breach of the APA.  Under Georgia law, there is no requirement of any pre-suit offer of restoration in these circumstances.

## **CONCLUSION**

Plaintiffs' sought a preliminary injunction for two reasons: To prevent USPF from using the PPF name and to free Daniel Glantz and Tony Perez from restrictive covenants they entered after the sale. At the very least, the weight of record evidence establishes that the sale was a legal nullity because neither PPF nor Glantz had the right to sell the assets at issue.  If the APA and

the Master Agreements are declared void, Glantz and Perez will be free to do business and pursue other ventures. At that point, even if the PPF name still belongs to the Receivership, Glantz will be free to contact old customers and work to repair his personal goodwill, goodwill that he built up over the course of 30 years in business. If preliminary relief is not granted at this time, the goodwill of both PPF and Glantz will continue to diminish in value and will likely become worthless. *See, e.g.,* DE 30; Transcript at 51:5-12 ("[P]eople didn't want to do business with [PPF] anymore. [Their] reputation was ruined.").

Plaintiffs appeal to equity. Plaintiffs sought a declaration of their rights under the APA and the Master Agreements. Based on the record already established in this case, the Court could resolve that aspect of the matter now by declaring those Agreements void or unenforceable. Such a resolution would save Daniel Glantz's livelihood, allow him to salvage his reputation and his goodwill with his old customers, and serve the interests of justice.

Dated: June 10, 2016                                                        Respectfully submitted,

                                                                            By: s/ *Jonathan Pollard*

                                                                            Jonathan E. Pollard
                                                                            Florida Bar No.: 83613
                                                                            jpollard@pollardllc.com

                                                                            Nathan M. Saunders
                                                                            Florida Bar No.: 107753
                                                                            nsaunders@pollardllc.com

                                                                            Pollard PLLC
                                                                            401 E. Las Olas Blvd. #1400
                                                                            Fort Lauderdale, FL 33301
                                                                            Telephone: 954-332-2380
                                                                            Facsimile: 866-594-5731

                                                                            *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing to be electronically filed on June 10, 2016. All registered counsel are to receive notice of the filing via the Court's electronic case filing system.

                                                                            s/ *Jonathan Pollard*