UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:16-cv-60009-UU

PRO PREMIUM FINANCE COMPANY,
INC., *et al.*,

    Plaintiffs,

v.

US PREMIUM FINANCE SERVICE
COMPANY, LLC, *et al.*,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Second Amended Complaint for Failure to Prosecute in Name of Real Party in Interest, D.E. 76. The Motion is fully briefed and ripe for disposition.

THE COURT has reviewed the pertinent portions of the record and is otherwise fully advised in the premises.

## BACKGROUND

The following allegations are taken from Plaintiffs' Second Amended Complaint (the "SAC"), which is the operative Complaint in this action, and exhibits filed in this action that were also filed in three state court cases in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida (the "Broward Court"), Case Nos. CACE 15-16929, CACE 16-2191 and CACE 16-6701.[1] D.E. 43.

---

[1] The Court is entitled to take judicial notice of both its own records and records from the Broward Court actions to resolve Defendants' Motion to Dismiss. *Bobadilla v. Aurora Loan Services, LLC*, 479 F. App'x 625, 627 (11th Cir. 2012) (citing *United States v. Rey*, 811 F.2d 1453, 1457 n. 5 (11th Cir. 1987)).

This action stems from the sale of Pro Premium Finance Company, Inc. ("PPF") to either U.S. Premium Finance Service Company, LLC ("USPFSC"), US Premium Finance, a division of the Brand Banking Company ("USPF") or Brand Banking Company ("Brand").[2] *Id.* PPF is an insurance premium finance company that was founded by Daniel Glantz and Michael Glantz in 1987. *Id.* ¶ 20. PPF provides insurance premium financing for businesses and consumers that are unable to pay in full for their insurance premiums at the time such insurance premiums are due. *Id.* ¶ 21. Most of PPF's business involves commercial insurance policies. *Id.* ¶ 22. PPF had credit facilities, including a credit facility with Bank United that exceeded $50 million. *Id.* ¶ 32.

In July 2015, PPF was placed on notice of a potential fraud involving one of PPF's largest clients. *Id.* ¶ 33. PPF informed Bank United of the potential fraud. *Id.* ¶ 35. On September 15, 2015, Bank United ceased to fund PPF's credit facility and, shortly thereafter, declared PPF in default under the terms of its loan agreement. *Id.* ¶ 36.

On September 29, 2015, BankUnited filed suit in Broward Court to foreclose on its security interest and appoint a receiver. Broward Court Case No. CACE 15-16929, Compl. (Sept. 29, 2015). On October 9, 2015, the Broward Court issued an Order Appointing Receiver, which appointed James S. Howard of Glass Ratner Advisory and Capital Group, LLC as receiver of assets held in the name of PPF (the "Receiver"). D.E. 43-1. In particular, the Order provides:

> Appointment: James S. Howard of Glass Ratner Advisory and Capital Group, LLC ("Receiver") is hereby appointed Receiver of those certain Branch Banking and Trust Company ("BB&T") bank accounts held in the name of Defendant PRO PREMIUM FINANCE COMPANY, INC. ("PPF") including, but not limited to, the accounts identified by the following last four digits of each such account xxxxxxxx6019, xxxxxxxx1656, xxxxxxxx5640, xxxxxxxx6000, and xxxxxxxx9929, and all other personal property, other than bank accounts held in the name of PPF at

---

[2] Plaintiffs and Defendants dispute whether USPFSC, USPF or Brand are parties to the relevant contracts at issue in this action. In the SAC, Plaintiffs often refer generically to "US Premium Finance." The Court will, therefore, use the same terms used by Plaintiffs in the SAC when summarizing Plaintiffs' allegations.

> BankUnited, as more particularly described in that certain Security Agreement dated November 27, 2012 and UCC-1 Financing Statement filed December 7, 2012 with the Florida Secured Transaction Registry, number 201208002609 (collectively, the "Collateral").
>
> . . .
>
> Such appointment shall be effective upon execution of this Order and shall continue until further order of this Court.

*Id.* p. 2, ¶ 1. The UCC-1 Financing Statement filed December 7, 2012 (the "UCC-1 Financing Statement") names PPF as the "Debtor" and provides, in relevant part:

> ALL "INVENTORY," "EQUIPMENT," "GOODS" WHICH ARE OR ARE ABLE TO BECOME FIXTURES . . . "ACCOUNTS", "CHATTEL PAPER", INSTRUMENTS", GOODS", "LETTER OF CREDIT RIGHTS", "INVESTMENT PROPERTY", "SECURITIES", **"COMMERCIAL TORT CLAIMS",** "DOCUMENTS"**, GENERAL INTANGIBLES"** AND "ITEMS" IN WHICH DEBTOR NOW HAS ANY RIGHTS OR HEREAFTER ACQUIRES ANY RIGHTS, HOWEVER ARISING, INCLUDING ALL BANK ACCOUNTS IN WHICH DEBTOR HAS DEPOSITED PROCEEDS OF ANY COLLATERAL . . . FILES, CORRESPONDENCE, ADVERTISING PROGRAMS, CUSTOMER LISTS, ALL MONIES BECOMING DUE TO DEBTOR FROM ANY SALE OF COLLATERAL ON ACCOUNT OF REBATES, WARRANTY SERVICE OR BONUSES; AND ALL BOOKS AND RECORDS OF DEBTOR, INCLUDING COMPUTER RECORDS AND PROGRAMS (EXCLUDING ANY LICENSED SOFTWARE), **AND ALL RENTS, ROYALTIES, REVENUES, PROFITS, INTEREST, INCREASES, PRODUCTS AND PROCEEDS ARISING IN CONNECTION WITH THE FOREGOING IN WHICH DEBTOR NOW AND HEREAFTER HAS ANY RIGHTS, PRESENTLY OWNED AND HEREAFTER ACQUIRED, CREATED AND ARISING.**
>
> . . .
>
> THE COLLATERAL IS DESCRIBED BY TYPES AS DEFINED IN THE UNIFORM COMMERCIAL CODE AS ADOPTED IN FLORIDA AS OF THE DATE OF THIS FINANCING STATEMENT ("UCC"). WORDS IN QUOTATION MARKS HEREIN SHALL HAVE THE MEANINGS ASCRIBED OT THEM IN THE UCC.(emphasis added)

3

D.E. 46-1 p. 2.

Sometime in 2015, PPF hired a business broker to explore options for selling the business. D.E. 43 ¶¶ 39. The broker introduced PPF to US Premium Finance, a division of Brand Bank out of Georgia. *Id.* Beginning in September 2015, PPF engaged in extensive negotiations with U.S. Premium Finance regarding a potential acquisition of PPF's assets. *Id.* ¶¶ 40-78. These negotiations were held principally between William Villari, president of USPF, USPFSC and/or Brand, and Daniel Glantz and Tony Perez ("Perez") of PPF. *Id.* During these negotiations, US Premium Finance, acting through Villari, repeatedly represented that, if PPF agreed to be sold to US Premium Finance, then PPF's business model would continue forward, unchanged, following the sale. *Id.* Specifically, US Premium Finance represented that the company would: (1) continue to operate under the PPF brand; (2) operate within US Premium Finance as its own autonomous entity; (3) use the same operating platform, commission program and referring agents as in the past; (4) use the same business model with respect to the manner in which PPF funded loans as in the past; and (5) fund all new business (*i.e.*, new premium financing) using US Premium Finance's own collateral. *Id.* ¶¶ 68-83. Plaintiffs allege that US Premium Finance was aware of the falsity of each of these representations and aware of Plaintiffs' reliance on them. *Id.* ¶ 84.

On October 12, 2015, PPF, without the authorization or participation of the Receiver, executed an Asset Purchase Agreement ("APA"), through which it sold certain assets to US Premium Finance. *Id.* ¶ 93. US Premium Finance paid no money to acquire PPF under the APA. *Id.* ¶ 94. Instead, US Premium Finance provided consideration in the form of an agreement to fund all new business moving forward and, possibly, hire certain PPF employees. *Id.* The APA was executed by William Villari, President of US Premium Finance, on behalf of US Premium Finance. *Id.* ¶ 95. Plaintiffs attach the APA to the SAC. D.E. 43-9.

On October 14, 2015, in reliance on US Premium Finance's representations, Daniel Glantz and Tony Perez each executed employment agreements with USPF entitled Master Agreements (the "Master Agreements"). D.E. 43 ¶ 102; D.E. 14-2. The Master Agreements contain broad restrictive covenants that prohibit Daniel Glantz and Tony Perez from working in the industry in any manner whatsoever for a period of two years, should these individuals terminate employment with USPF. D.E. 43 ¶¶ 103-105. The Master Agreements are executed by Daniel Glantz and Tony Perez in their individual capacities and Mr. Villari in his capacity as President of US Premium Finance, a division of the Brand Banking Company. *Id.* ¶ 106; D.E. 43-2.

Beginning in late October 2015, Defendants restructured PPF's former business model by: (1) beginning to process all new business through Defendants' management platforms; (2) placing Mr. Villari, Neal Dunoff and Matthew Essery in charge of all PPF operations; and (3) changing PPF's protocol for processing new incoming loans. *Id.* ¶¶ 111-122. These changes have altered PPF's core business model and caused friction between PPF and referring insurance agents who had done business with PPF in the past and have damaged PPF's profitability and standing in the industry. *Id.* ¶¶ 129, 132. Because Daniel Glantz's and Tony Perez's compensation is substantially tied to PPF's performance, Plaintiffs allege that Defendants' actions have adversely affected Daniel Glantz's and Tony Perez's respective compensation. *Id.* ¶ 138.

Since October 2015, Defendants have also allegedly used several million dollars of PPF's collateral to fund new loans. *Id.* ¶ 143. Plaintiffs allege that Defendants' use of this collateral violated the APA and, moreover, prevented PPF from using collateral to pay down its financial

5

obligations to Bank United, among others, thereby causing PPF to incur substantial additional accrued interest. *Id.* ¶¶ 144, 146.

The developments described above have resulted in four lawsuits. First, as discussed above, BankUnited first filed suit on August 29, 2015 in Broward Court Case No. CACE 15-16929 to foreclose on its security interest in PPF's personal property and appoint the Receiver.

Second, on January 4, 2016, Plaintiffs filed the instant case in the U.S. District Court for the Southern District of Florida. D.E. 1.

Third, on February 5, 2016, USPF filed Broward Court Case No. CACE 16-2191 against E.T.I. Financial Corp., Daniel Glantz, Tony Perez, and PPF, alleging that Daniel Glantz, Tony Perez and PPF breached the APA, the Master Agreements, their fiduciary duty of loyalty, committed fraud and converted USPF's software and data. Broward Court Case No. CACE 16-2191, Compl. ¶¶ 83-127 (May 5, 2016). USPF also alleged that E.T.I. Financial Corp. tortiously interfered with USPF's contracts with Daniel Glantz and Perez. *Id.*

Lastly, on April 13, 2016, BankUnited filed suit in Broward County Circuit Court against Robert Granite ("Granite"), Mr. Villari, USPF, USPFSC, Daniel Glantz, Toni Glantz and PPF, alleging claims for tortious interference against USPF, Mr. Villari and Granite; conversion against USPF, Mr. Villari and Granite; breach of contract against USPFSC and USPF; accounting against USPFSC and USPF; declaratory judgment against USPF, PPF, Daniel Glantz and Toni Glantz declaring that the APA is void in light of the October 9, 2015 Order Appointing Receiver, as "only the Receiver had the authority to sell, transfer or convey the Collateral, or any portion thereof;" and rescission of the APA against USPF, PPF, Daniel Glantz and Toni Glantz on grounds that PPF, Daniel Glantz and Toni Glantz "had no authority to sell, transfer or convey the Collateral, or any portion thereof, to anyone, including USPF" and therefore could not enter

into the APA. Broward Court Case No. CACE 16-6701, Second Am. Compl. ¶¶ 59-113 (July 22, 2016).

On April 28, 2016, Plaintiffs filed the SAC, bringing the following five claims:

(1) PPF's, Daniel Glantz's and Tony Perez's claim for rescission of the APA against all Defendants (Count I);

(2) Daniel Glantz's and Tony Perez's claim for rescission of their respective Master Agreements against USPF and Brand (Count II);

(3) PPF's, Daniel Glantz's and Tony Perez's claim for fraud in the inducement against all Defendants (Count III);

(4) PPF's, Daniel Glantz's and Tony Perez's claim breach of the APA against all Defendants (Count IV); and

(5) Daniel Glantz's and Tony Perez's declaratory judgment claims against USPF and Brand, seeking declarations that the restrictive covenants contained in the Master Agreements are void due to fraud (Count V) and lack of a legitimate business interest (Count VI).

D.E. 43. On May 12, 2016, Defendants moved to dismiss the SAC and the Court denied Defendants' Motion. D.E. 46, 61.

In the Court's Order on Defendants' May 12, 2016 Motion to Dismiss, the Court: (1) ordered Plaintiffs to provide proof of notifying the Receiver of this action; and (2) stated that "**if the Receiver does not intervene by August 1, 2016, then the Court will construe this as the Receiver electing not to intervene or otherwise ratify, join or be substituted into this action.**" D.E. 61 p. 11 (emphasis in original).

On August 1, 2016, Plaintiffs filed a Notice of Filing Receiver Declaration, which attached as an exhibit the Declaration of the Receiver, James S. Howard (the "Receiver Declaration"). D.E. 74, 74-1. The Receiver Declaration includes three statements relevant to the instant Motion. First, the Receiver states that he was "aware of the proceedings in this case . . .

7

and [has] been aware of these proceedings since January of this year." D.E. 74-1 ¶ 3. Second, the Receiver states that it is his view that "notwithstanding that the subject matter of the APA affects property which constitutes part of the Collateral . . . the right of Glantz and/or PPF to advance and litigate Claims [in this lawsuit] is not property that constitutes Collateral because it is [his] view that the APA is void." *Id.* ¶ 5. Lastly, the Receiver states that he "do[es] not object to Daniel Glantz . . . or Pro Premium Finance Company, Inc. pursuing any of the Claims, without waiver of any of [his] rights as Receiver under the Receiver Order." *Id.* ¶ 6.

On August 12, 2016, Defendants filed the instant Motion to Dismiss Second Amended Complaint for Failure to Prosecute in Name of Real Party in Interest. D.E. 76.

## II.     Failure to Prosecute in the Name of the Real Party in Interest

### A. Legal Standard

Federal Rule of Civil Procedure 17(a)(1) provides that "every action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Under Rule 17, a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).

"The real-party-in-interest principle is a means to identify the person who possesses the right sought to be enforced." *Siemens USA Holdings, Inc. v. United States*, 960 F. Supp. 2d 221, 223-24 (D.D.C. 2013) (citing Wright & Miller, Federal Practice and Procedure § 1550 at 534 (2010)). In other words, "[t]he basic purpose of Rule 17(a)'s insistence that every action be prosecuted in the name of the real party in interest is to protect a defendant from facing a subsequent similar action brought by one not a party to the present proceeding and to ensure that

any action taken to judgment will have its proper effect as res judicata." *Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Mgmt., Inc.*, 620 F.2d 1, 4 (1st Cir. 1980).

Moreover, "[t]he concepts of a plaintiff's standing to sue and his status as the real party in interest are interrelated, yet conceptually distinct." *Gonzalez ex rel. Gonzalez v. Reno*, 86 F. Supp. 2d 1167, 1182 (S.D. Fla. 2000), *aff'd sub nom. Gonzalez v. Reno*, 212 F.3d 1338 (11th Cir. 2000). While standing is "a constitutional requirement that asks whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues," the real-party-in-interest inquiry asks whether a party: (1) is "the party who, by the substantive law, has the right sought to be enforced;" and (2) "possesses a significant interest in the action to entitle him to be heard on the merits." *Id.* (internal citations and quotation marks omitted).

Because the Federal Rules of Civil Procedure "do not contain a specific procedure for raising an objection that plaintiff is not the real party in interest . . . a motion to dismiss under Rule 12(b)(6) is one proper method of bringing this issue to the Court." *Siemens USA Holdings, Inc.*, 960 F. Supp. 2d at 223; *Whelan v. Abell,* 953 F.2d 663, 672 (D.C. Cir. 1992) ("A real-party-in-interest defense can be raised as a Rule 12(b)(6) motion, stating, in effect, that because the plaintiff is not the person who should be bringing the suit, the plaintiff has 'fail[ed] to state a claim upon which relief can be granted.'" (citing and quoting Fed. R. Civ. P. 12(b)(6)). A district court's dismissal under Rule 17 is reviewed for abuse of discretion. *See Arabian Am. Oil Co. v. Scarfone*, 939 F.2d 1472, 1477 (11th Cir. 1991); *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 43-44 (2d Cir. 2005) (collecting cases).

B. <u>Analysis</u>

i. *Real party in interest*

Defendants argue that the Receiver is the real party in interest for three reasons. First, the October 9, 2015 Broward Court Order Appointing Receiver in Case No. CACE 15-16929 provides that the "Receiver shall immediately take possession of all of the assets, files, papers, records, documents, monies, securities, choses in action, books of account, and all other property of [Pro Premium] which constitutes Collateral." D.E. 76 p. 8 (citing D.E. 43-1 ¶ 4). Second, the October 9, 2015 Order appointed the Receiver over *all* of PPF's assets, which included "all . . . personal property . . . as more particularly described in that certain Security Agreement dated November 27, 2012 and UCC-1 Financing Statement filed December 7, 2012 with the Florida Secured Transaction Registry, number 201208002609." *Id.* (citing D.E. 43-1 ¶ 1). Lastly, the property described in the UCC-1 Financing Statement includes, among other things, "[a]ll . . . 'Equipment' . . . 'Commercial Tort Claims' [and] 'General Intangibles' . . . in which [Pro Premium] now has any rights or hereafter acquires any rights, however arising . . . including customer lists [and] books and records." *Id.* (citing D.E. 46-1 p. 2). Accordingly, Defendants argue that the Receiver "has control of all of Pro Premium's intangibles, choses in action [*sic*], commercial tort claims, equipment, books and records, customer lists, and other assets," such that "[a]ll of the claims brought in this action by Plaintiffs on behalf of Pro Premium are property of the Receivership estate as they are part of the Collateral managed and preserved by, and in the possession of, the Receiver." *Id.*

In response, Plaintiffs argue that the Receiver is not the real party in interest because Daniel Glantz has standing to assert a claim in this action. D.E. 84. pp. 3-4. In particular, Plaintiffs argue that "Daniel Glantz is personally liable to BankUnited for the loan at issue in the

10

Receiver Action and the interest that accrues thereon . . . [and] Defendants' wrongful actions have increased the amount of that interest, thereby causing a direct injury to Glantz." *Id.* For this reason, Plaintiffs argue "[t]his entire action can proceed based solely upon this Court's prior determination that Glantz has standing in his individual capacity to pursue these claims." *Id.*

Upon review of Plaintiffs' SAC, the exhibits attached thereto, and state court documents from Broward Court Case No. CACE 15-16929 cited to by the parties, the Court concludes that the Receiver is the real party in interest as to PPF's claims in this action. However, Daniel Glantz and Tony Perez are real parties in interest as to claims to rescind or recover for violations of the Master Agreements.

"The capacity of a receiver to sue in federal court is governed by the law" of Florida because it is "the forum state." *Meyers v. Moody,* 693 F.2d 1196, 1205 (5th Cir. 1982) (citing Fed. R. Civ. P. 17(b)(3) and Wright & Miller, Federal Practice and Procedure § 1567 (1971)). "Under Florida law, once a receiver is appointed for a business, the business loses power to transfer or otherwise act with regard to the property subject to the receivership." *O'Neal v. Gen. Motors Corp.*, 841 F. Supp. 391, 398 (M.D. Fla. 1993). Moreover, "[t]he property of an entity in receivership includes any causes of action available to that entity." *Id.*; *Hamilton v. Flowers,* 183 So. 811, 817 (Fla. 1938) ("The general rule is that a receiver takes the rights, causes and remedies which were in the corporation, individual or estate whose receiver he is, or which were available to those whose interests he was appointed to represent."). For this reason, courts applying Florida law have held that a receiver is "the real party in interest as to a cause of action and the one with the right to sue." *See, e.g.*, *O'Neal*, 841 F. Supp. at 398 (citing *Bancroft v. Allen*, 190 So. 885, 890 (Fla. 1939), *Richardson v. S. Fla. Mortgage Co.*, 136 So. 393, 395 (Fla. 1931) and *Fugazy Travel Bureau, Inc. v. State*, 188 So. 2d 842, 844 (Fla. 4th DCA 1966)).

The SAC, which attaches as exhibits the October 9, 2015 Broward Court Order Appointing Receiver (the "Receiver Order") and the December 7, 2012 UCC-1 Financing Statement, demonstrates that the Receiver is the real party in interest under Florida law as to PPF's claims in this case, which includes all claims stemming from the APA executed by PPF, for the following reasons:

(a)     The Receiver Order

The Receiver Order appointed the Receiver to exercise immediate authority over: (1) "certain Branch Banking and Trust Company ("BB&T") bank accounts held in the name of Defendant PRO PREMIUM FINANCE COMPANY, INC. ("PPF") including, but not limited to, the accounts identified by the following last four digits of each such account xxxxxxxxx6019, xxxxxxxxx1656, xxxxxxxxx5640, xxxxxxxxx6000, and xxxxxxxxx9929;" and (2) "all other personal property, other than bank accounts held in the name of PPF at BankUnited, as more particularly described in that certain Security Agreement dated November 27, 2012 and UCC-1 Financing Statement filed December 7, 2012 with the Florida Secured Transaction Registry, number 201208002609 (collectively, the "Collateral")." D.E. 41-2 p. 2, ¶ 1. The Receiver Order therefore granted the Receiver exclusive control over all of PPF's personal property as described in the November 27, 2012 Security Agreement and UCC-1 Financing Statement.[3] The Receiver

---

[3] While the Receiver Order appears to incorporate both the December 7, 2012 UCC-1 Financing Statement and a "certain Security Agreement dated November 27, 2012," the parties have not filed the November 27, 2012 Security Agreement with this Court and raise no arguments concerning this security agreement in briefing the instant Motion to Dismiss. D.E. 43-2 ¶ 1; *see* D.E. 76, 84, 85. The parties have therefore waived argument as to whether the November 27, 2012 Security Agreement impacts the Receiver's status as the real party in interest. *Smart v. City of Miami Beach*, 1 F. Supp. 3d 1350, 1354 (S.D. Fla. 2014); *Eisenberg v. Shendell & Associates, P.A.*, No. 10-CV-62149-JIC, 2011 WL 1233253, at *2 (S.D. Fla. Mar. 31, 2011) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived." (citing *United States v. Fiallo–Jacome,* 874 F.2d 1479, 1482 (11th Cir. 1989)); *see also Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 (11th Cir. 1994) ("As a

continues to retain exclusive control of such collateral because there is no dispute that the receivership is still in effect. *See* D.E. 43-1 p. 2, ¶ 1 ("Such appointment [of the Receiver] shall be effective upon execution of this Order and shall continue until further order of this Court.").

(b)  The UCC-1 Financing Statement

The UCC-1 Financing Statement defines Collateral expansively to include virtually all of PPF's assets as well as PPF's "General Intangibles" and "Commercial Tort Claims." In particular, the UCC-1 Financing Statement defines Collateral to include, in relevant part:

> "INVENTORY," "EQUIPMENT," "GOODS" WHICH ARE OR ARE ABLE TO BECOME FIXTURES . . . "ACCOUNTS", "CHATTEL PAPER", "INSTRUMENTS", "GOODS", "LETTER OF CREDIT RIGHTS", "INVESTMENT PROPERTY", "SECURITIES", "COMMERCIAL TORT CLAIMS", "DOCUMENTS", "GENERAL INTANGIBLES" AND "ITEMS" IN WHICH DEBTOR NOW HAS ANY RIGHTS OR HEREAFTER ACQUIRES ANY RIGHTS, HOWEVER ARISING, INCLUDING ALL BANK ACCOUNTS IN WHICH DEBTOR HAS DEPOSITED PROCEEDS OF ANY COLLATERAL . . . FILES, CORRESPONDENCE, ADVERTISING PROGRAMS, CUSTOMER LISTS, ALL MONIES BECOMING DUE DEBTOR FROM ANY SALE OF COLLATERAL ON ACCOUNT OF REBATES, WARRANTY SERVICE OR BONUSES; AND ALL BOOKS AND RECORDS OF DEBTOR, INCLUDING COMPUTER RECORDS AND PROGRAMS (EXCLUDING ANY LICENSED SOFTWARE), AND ALL RENTS, ROYALTIES, REVENUES, PROFITS, INTEREST, INCREASES, PRODUCTS AND PROCEEDS ARISING IN CONNECTION WITH THE FOREGOING IN WHICH DEBTOR NOW AND HEREAFTER HAS ANY RIGHTS, PRESENTLY OWNED AND HEREAFTER ACQUIRED, CREATED AND ARISING.

D.E. 46-1 p. 2.

---

general principle, this court will not address an argument that has not been raised in the district court.").

(c)  The Florida Uniform Commercial Code

The UCC-1 Financing Statement further provides that each of the terms included in the definition of Collateral should be interpreted as defined in Florida's Uniform Commercial Code, Fla. Stat. § 679.101, *et seq.* (the "Florida UCC"), in effect as of December 7, 2012. *Id.* This is particularly important with respect to "General Intangibles" and "Commercial Tort Claims," which are defined in the Florida UCC in effect at the time in the following way:

> (d) "General intangible" means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software.
>
> . . .
>
> (m) "Commercial tort claim" means a claim arising in tort with respect to which:
>
> 1. The claimant is an organization; or
>
> 2. The claimant is an individual and the claim:
>
> a. Arose in the course of the claimant's business or profession; and
>
> b. Does not include damages arising out of personal injury to or the death of an individual.

Fla. Stat. §§ 679.1021(1)(d)-(pp) (2013).

(d)  PPF's legal claims

Moreover, PPF's legal claims in this action constitute collateral in the exclusive control of the Receiver. PPF alleges the following three claims: (1) rescission of the APA in Count I; (2) fraudulent inducement to enter into the APA, contained in Count III; and (3) breach of the APA in Count IV. D.E. 43 ¶¶ 149-164, 188-196, 198-204. There is no question that the Receiver has the "right[s] sought to be enforced" by PPF in each of these three Counts and that the Receiver

"possesses a significant interest in the action to entitle him to be heard on the merits" because: (1) Florida law gives the Receiver the exclusive authority to "transfer or otherwise act with regard to the property subject to the receivership;" and (2) PPF's claims in this case are property subject to receivership as such claims constitute, at very least, "General Intangible[s]" and "Commercial Tort Claims" in the Receiver's exclusive possession and control. *See Reno*, 86 F. Supp. 2d at 1182; *O'Neal*, 841 F. Supp. at 398; *Hamilton*, 183 So. at 817; Fla. Stat. § 679.1021(1)(m) (2013); Fla. Stat. § 679.1021(1)(pp) (2013); *see also In re Huff*, 109 B.R. 506, 509-10 (Bankr. S.D. Fla. 1989) ("There is no question an equity receiver is the real party in interest and has standing to sue on behalf of the insolvent corporation."). For these reasons, the Receiver is the real party in interest as to PPF's claims to: (1) rescind the APA (Count I); (2) recover for being fraudulently induced to enter into the APA (Count III); and (3) recover for Defendants' alleged breach of the APA (Count IV).[4]

However, there is nothing to suggest that the Receiver, by taking possession of PPF's assets, also controls Daniel Glantz's and Tony Perez's rights to assert claims related to their Master Agreements because Plaintiffs' Second Amended Complaint and the Master Agreements, on their face, plausibly show that Mr. Glantz and Mr. Perez signed the Master Agreements as employment agreements in their individual capacities. D.E. 43 ¶ 102; D.E. 43-2 pp. 1-11, 12-22. Thus, Daniel Glantz and Tony Perez are real parties in interest as to their claims for rescission of the Master Agreements (Count II), fraud in the inducement (Count III) and declaratory judgment

---

[4] Daniel Glantz and Tony Perez argue that they are real parties in interest as to PPF's claims because their compensation is affected by whether PPF rescinds or recovers damages on their claims brought under the APA. D.E. 84 pp. 3-4. However, "more than an economic interest" is necessary to satisfy the real party in interest requirements of Rule 17. *See, e.g.*, *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984) ("By requiring that the applicant's interest be not only 'direct' and 'substantial,' but also 'legally protectable,' it is plain that something more than an economic interest is necessary [under Rule 17]. What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant.").

(Counts V and VI) insofar as these Counts seek relief based on Defendants' conduct relating to the Master Agreements, as Plaintiffs' allegations plausibly show that PPF was not a party to and did not execute the Master Agreements. *See O'Neal*, 841 F. Supp. at 398 ("The property of an entity in receivership includes any causes of action **available to that entity**." (emphasis added)); *see also O'Connell v. Cora Bett Thomas Realty, Inc.*, 563 S.E.2d 167, 170 (Ga. Ct. App. 2002) (entity must be party to a contract to be bound by its terms); *see also Am. Coach Lines of Orlando, Inc. v. N. Am. Bus Indus., Inc.*, No. 6:09-CV-1999, 2011 WL 653524, at *8 (M.D. Fla. Feb. 14, 2011) (collecting cases) (same).

Accordingly, the Court finds that the Receiver is the real party in interest as to: (1) Counts I and IV in their entirety; and (2) Count III **solely** to the extent that this Count relies on conduct relating to the Asset Purchase Agreement. Daniel Glantz and Tony Perez are real parties in interest as to Count III **solely** to the extent that this Count relies on conduct related to each individual's Master Agreement. Daniel Glantz and Tony Perez are also real parties in interest as to Counts V and VI, which state a plausible claim for declaratory relief on grounds that restrictive covenants in the Master Agreements are void. [5]

The Court will now address whether the Receiver properly intervened under Federal Rule of Civil Procedure 17.

### ii. *Intervening under Rule 17*

Defendants argue that the Receiver, as the real party in interest, has failed to intervene, ratify, join or be substituted into this action as required by Rule 17. Defendants first argue that the Receiver has not intervened in this case. D.E. 76 p. 9. Defendants then argue that the Receiver Declaration filed with the Court is insufficient to ratify, join or agree for the Receiver

---

[5] The Court has subject matter jurisdiction over Daniel Glantz's and Tony Perez's claims because the SAC alleges an amount in controversy exceeding $75,000 and complete diversity between Daniel Glantz and Tony Perez and Defendants. D.E. 43 ¶¶ 10-16.

16

to be substituted into this action under Rule 17 because the Receiver: (1) did not "authorize[] the maintenance of this action;" and (2) did not "in any way shape or form agree to be bound by any judgment or result reached in this action," but instead merely stated that he "do[es] not object" to PPF or Daniel Glantz pursuing their claims—while still reserving his rights as Receiver to assert claims in the other pending state court actions. D.E. 76 p. 10.

In response, Plaintiffs argue that the Receiver Declaration constitutes proper ratification under Rule 17 for three reasons. First, the Receiver's statement that he does "not object" to this action must, according to Plaintiffs, be construed as clear ratification. D.E. 84 p. 2. Second, the Receiver ratified this action by stating that the rights of Daniel Glantz and PPF to advance and litigate the claims in this action are "not property that constitutes the Collateral because it is [his] view that the APA is void." *Id.*; D.E. 74-1 ¶ 5. Lastly, Plaintiffs argue that, in any event, *res judicata* would bar the Receiver from pursuing claims resolved in this case because "the Receiver's interests are so closely aligned with the interests of PPF—namely, both seek return of the Collateral—that the Receiver and PPF are in privity." *Id.* p. 3.

The Court agrees with Defendants and finds the Receiver Declaration insufficient to satisfy Federal Rule of Civil Procedure 17. A proper ratification under Rule 17(a) requires that the ratifying party: (1) authorize continuation of the action; and (2) agree to be bound by its result. *See Integon Life Ins. Corp. v. Browning*, 989 F.2d 1143, 1154 (11th Cir. 1993) (party ratified action where it "agree[d] to be bound by the Court's determination of the Counterclaim" at issue in the action); *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 83 (2d Cir. 2013); *Haxtun Tel. Co. v. AT&T Corp.*, 57 F. App'x 355, 359 (10th Cir. 2003); *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 307 (5th Cir. 2001); *Mutuelles Unies v. Kroll & Linstrom*, 957

F.2d 707, 712 (9th Cir. 1992); *ICON Grp., Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 478 (3d Cir. 1987); Wright & Miller, Federal Practice and Procedure § 1555 n. 21 (2016).

Here, the Receiver fails to authorize continuation of this action and fails to agree to be bound by its result. Instead, the Receiver states, in relevant part, that he: (1) "do[es] not object to Daniel Glantz ("Glantz") or Pro Premium Finance Company, Inc. ("PPF") pursuing any of the Claims, **without waiver of any of my rights as Receiver under the Receiver Order**;" (2) believes that the "APA is void" because Plaintiffs "did not have authority to execute the APA, and therefore did not convey the Subject Collateral" to Defendants; and (3) takes the position that only he, as Receiver, "could convey the Subject Collateral [that was purportedly conveyed by the APA]." D.E. 74-1 ¶ 6 (emphasis added). These statements do not express an agreement to be bound by the Court's determination of Plaintiffs' claims. Instead, the Receiver sets forth legal conclusions that indicate the Receiver is the real party in interest because *only he* had the authority to enter into the APA and, perhaps more importantly, expresses the Receiver's clear desire to **not** be bound by the Court's rulings in this case so as to preserve his rights to pursue claims against Defendants in the ongoing Broward Court actions.[6] Accordingly, the Receiver has not ratified, joined or agreed to be substituted into this action under Federal Rule of Civil Procedure 17. *See Integron Life Ins. Corp.*, 989 F.2d at 1154; *Haxtun Tel. Co.*, 57 F. App'x at 359 (Rule 17 ratification ineffective where "it include[d] no language evidencing an agreement to be bound by the result"). Accordingly, it is

ORDERED AND ADJUDGED that Defendants' Motion, D.E. 76, is GRANTED IN PART AND DENIED IN PART, as follows:

---

[6] This is underscored by the fact that BankUnited, whose interests are being represented by the Receiver, is currently suing PPF, Daniel Glantz, Toni Glantz and USPF to rescind the APA in Broward Court Case No. CACE 16-6701. Broward Court Case No. 16-6701, Second Amended Complaint ¶¶ 108-113 (July 22, 2016).

(1) The Receiver, James S. Howard, is the real party in interest under Federal Rule of Civil Procedure 17 with respect to claims brought in this action by Pro Premium Finance Company, Inc. Accordingly, Pro Premium Finance Inc. is HEREBY DISMISSED as Plaintiff in this case.

(2) Counts I and IV of Plaintiffs' Second Amended Complaint are DISMISSED.

(3) **Pro Premium Finance Company, Inc's** claim of fraud in the inducement as to the APA, which is contained in Count III of Plaintiffs' Second Amended Complaint, is DISMISSED. Daniel Glantz's and Tony Perez's claims of fraud in the inducement as to the Master Agreements, which are contained in Count III, **are NOT** dismissed.

(4) The Motion is otherwise denied.

DONE AND ORDERED in Chambers at Miami, Florida, this 26th day of October, 2016.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record